### SKELLY OIL CO. v. AMACKER et al.

### No. 10772.

Circuit Court of Appeals, Fifth Circuit.

Dec. 16, 1943.

Rehearing Denied Feb. 7, 1944.

W. P. Z. German, of Tulsa, Okl., and Ed. M. Whitaker and Robert M. Turpin, both of Midland, Tex., for appellant.

John J. Watts, of Crane, Tex., and Henry Russell, of Pecos, Tex., for appellees.

Before SIBLEY, HOLMES, and WALLER, Circuit Judges.

PER CURIAM.

Elmer O'Neal Amacker, the deceased, a roustabout for many years in the oil fields of Texas, was in the general employ of Gibbins & Heasley, Inc., which was engaged in the business of furnishing services to oil producers, such as the laying of pipe, digging of pits, and the cleaning of oil tanks. For additional facts, see 132 F.2d 431, since this is the second appearance of the case in this court.

After reversal on the first appeal, further pleadings were filed by both parties. These pleadings were lengthy, indefinite, inconsistent, and perplexing. The plaintiffs below had claimed in the first trial that the deceased was the employee of Gibbins & Heasley, Inc., an independent contractor, and an invitee on the premises of appellant at the time of his injury. The appellant, defendant below, proceeding on the theory that the deceased was an invitee, had claimed that the duty to warn and to exercise ordinary care was on the independent contractor.

In the pleadings filed after the case had been remanded by this court, the plaintiffs asserted that the Skelly Oil Company had supervision and control of the deceased, notwithstanding its contention that deceased was merely an invitee. Also, while in one part of its pleadings the appellant admitted that the deceased was the employee of an independent contractor and was an invitee, in another place it categorically denied that he was an invitee. The defendant filed a fifth plea, alleging that the plaintiff was not entitled to recover against it because it was a subscriber to the Workmen's Compensation Law of Texas, Vernon's Ann.Civ.St.Tex. art. 8306 et seq., at the time of the accident. In its sixth defense appellant asserted that the appellees had already received damages from the compensation carrier of Gibbins & Heasley, Inc., which it pleaded in bar of any further recovery and, in the alternative, it claimed credit for the same on any amount that might be recovered against it.

During the second trial the appellant offered evidence to show that it was a subscriber under said Compensation Law and contended that this court, in its prior opinion, had held that the deceased was under the supervision and control of the appellant; that the evidence for the plaintiffs in the case showed that the defendant had full supervision and control of the deceased; and that under the borrowed-servant rule the deceased was the special employee of the defendant; in which event, it alleged that the sole and exclusive right of recovery was under said Compensation Law. Objections were interposed by the plaintiffs below to this testimony, and much argument was had on the point.

The trial court raised the question that the defendant had not interposed such defense. There was further argument, but the final result was that the court admitted the evidence. The court evidently took the view that the question of whether or not the deceased was a special employee of the defendant on the occasion in question was an issue in the case; otherwise the evidence would have been irrelevant. That the court considered this as one of the issues upon which the case was tried is further indicated by the fact that some days after the verdict it permitted the defendant to file its eighth defense, alleging that the deceased was its special employee, working under its supervision and control in cleaning the tank.

We must assume that when the lower court permitted the filing of the eighth defense after verdict it did so in recognition of the fact that the subject matter thereof was one of the issues in the trial, either raised by the fifth defense or by reason of categorical denials in other pleadings. If neither of these considerations had been present, the lower court probably would have denied the defendant the right to file this defense after verdict. We think the case was tried by the parties as if such an issue had been presented by the pleadings. Therefore, the amendment was properly allowed under rule 15(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

In these circumstances the lower court erred in peremptorily charging the jury that the deceased was an invitee upon the premises of appellant. If the deceased were a special employee of the defendant, he was not merely an invitee, and the plaintiff's exclusive remedy was under the workmen's compensation statute.

■ The court also erred in refusing to give defendant's special instruction No. 1, to the effect that if the deceased were the special employee of the defendant in cleaning out the tank, and in such work was under the supervision and control of the defendant, the verdict should be for the defendant. There was substantial evidence to the effect that the deceased was doing work for the defendant, and that the defendant not only had the right to supervise and control him in his work, but actually exercised that right. This presented an issue that should have been submitted to the jury, and the failure of the court so to submit the same was reversible error.

Upon another trial, in order to avoid the confusion resulting from the pleadings in their present state, new pleadings throughout should be filed by both sides. The judgment appealed from is reversed; and the cause is remanded for further proceedings not inconsistent with this opinion.

WALLER, Circuit Judge (dissenting in part and concurring in part).

I concur in the view of the majority that the case should be reversed for the reasons set out in the majority opinion, but my study of the evidence convinces me that there is no dispute in the evidence that the defendant had the *right* to the supervision, direction, and control of the deceased, and that under the Workmen's Compensation Statute of Texas, and decisions of the State of Texas, and under the well-known borrowed servant rule, Elmer O'Neal Amacker became and was the special employee of the defendant and, therefore, the right of recovery is measured exclusively by the Workmen's Compensation Statute of Texas. The only testimony in the record which suggests a contrary conclusion does not, in law, justify such conclusion. It is argued by the appellees that the testimony of A. L. Rhodes, the foreman of the defendant, was to the effect that the defendant did not supervise and control the work of the deceased. It may be conceded that the witness Rhodes denied that he *actually* supervised the work of Amacker, but the test is not actual supervision but the *right* to control and supervise. Furthermore, the first question asked Mr. Rhodes on this subject was:

"Q. Did you do anything *other than* supervise the work that was being done? (Italics supplied.) A. No.

\* \* \* \* \* \*

"Q. Did you attempt to exercise control over Mr. Amacker as to how his work was being performed? A. No.

"Q. You didn't? A. No."

Further in Mr. Rhodes' testimony, he stated: "Gibbins & Heasley sent me a crew to work *under me.*" (Italics added.)

Again:

"Q. Did you do anything except *supervise* the work that was being done? (Italics added.) A. No."

This testimony, considered in the most favorable light to the appellees, is nothing more than a denial by Rhodes that he *actually* did direct and supervise the work of the deceased, but it is submitted that his answers to the questions were as to whether he did anything *other than* supervise the work, and certainly did not evoke evidence that he had no right of control and supervision. This testimony of the witness Rhodes is insufficient to raise a question of fact as to the *right* to supervise and control. Furthermore, this court held, in its first opinion, that Amacker *was* under the supervision and control of the defendant. No new evidence was put into the record on the second trial to show the contrary, and in that particular, at least, the former decision of this court was correct.

The evidence as to the actual contract between Skelly Oil Company and Gibbins & Heasley, Inc., is very meager, but it appears that Gibbins & Heasley, Inc., had on other occasions furnished employees to the defendant for similar work, and that on the occasion in question Gibbins & Heasley, Inc., was called upon by the defendant to furnish two men for the purpose of cleaning out the tank. Rhodes, the foreman for the defendant, testified that Gibbins & Heasley, Inc., sent a crew to work under him. Hamon V. Price, one of the Gibbins & Heasley men who worked with Amacker on the first day in cleaning out the tanks, testified that the job was done "on a roustabout scale". The term "roustabout scale" is not explained, but it evidently had reference to a scale of wages for roustabouts, of which Amacker was one, and doubtless had reference to the hourly rate of pay for roustabouts in that vicinity. I interpret the record to reveal that Amacker and his co-worker were being compensated on an hourly basis, and that their compensation was paid by their regular employer, Gibbins & Heasley, Inc., but the Texas courts have uniformly held that the question of who pays the wages

under the borrowed servant rule is of minor importance, but that the all-important question is the *right to* direct, supervise, and control the servant in doing the work. The witnesses on the subject all placed the right of control' and supervision in the defendant, and the plaintiffs, in paragraph 3 of their amended complaint, make the following allegation: "Plaintiffs allege that the Defendant, Skelly Oil Company, had full control and charge of said Elmer O'Neal Amacker * * *."

It seems to me that where the plaintiffs allege that the defendant had full control and charge of the workmen, and where the proof shows that fact conclusively, and since the right to control and supervise is the test of the relationship of master and servant, it is hardly open to argument that such a relationship exists. Such being the case, the Workmen's Compensation Law governs and the plaintiffs had no right of action at common law. It is my view, therefore, that the motion of the defendant for a directed verdict should have been sustained.